May it please the Court, Mark Stern for the United States. The District Court in this case correctly recognized for the most part the proper analysis of the actions of the intelligence analysts whose negligence resulted in the plaintiff's very regrettable imprisonment. The District Court recognized the FPCA, the Federal Tort Claims Act, generally bars actions for false arrest and the act also contains an exception to the exception for actions taken by law enforcement officers and investigative officers a term that's defined in the act and it's a proviso that was put into the statute essentially to deal with the kinds of abuses that were occurring by people who would enter no-knock raids and then you know proceed to assault people and the background is discussed at some length in this court's decision in Orsay which is cited in my brief. Now the intelligence analysts whose negligence in question basically information that was boned into them and one of the four intelligence analysts made a mistake in the spelling of the plaintiff's name which ultimately resulted in his indictment in Arizona Grand Jury and the District Court recognized that that kind of negligence would be barred as falling within exception for the bar on actions for false arrest. The only place where the District Court having engaged in an altogether correct analysis then we respectfully submit and that the plaintiff could nevertheless proceed on a claim of a grossly negligent police investigation and the problem with that even apart from some of its other difficulties that as this court has repeatedly recognized it doesn't matter what label you put on to a claim if the damage is too great. are resulting from the false arrest because the act talks about damages arising under a claim. Why aren't the analysts considered investigative officers given that they had the power to do the administrative searches and were in fact engaged in searches and review of data? Well I mean the act requires you to be able to seize to make arrests or seize evidence. But they did seize evidence didn't they? With respect no your honor and the District Court certainly didn't think that they had. I mean the plaintiff made the argument to the District Court that he's making on appeal which is that they were law enforcement officers for that reason on the theory that they could issue administrative subpoenas. Now first that's wrong as a matter of fact. I thought they gathered data from the telephone companies and from the DOE and then matched the data. Is that wrong? They did. That's absolutely right your honor. But that's not seizing evidence. I mean there are a lot of people. They're gathering evidence. Well but it's very different your honor. I mean there are a lot of people who work on the analysis of evidence. I don't know how you can distinguish what they did from investigation and just say well it's a category of analysis. It wasn't as though they were presented with this body of data and then they analyzed it. They were out there gathering it, matching it and producing things from it. Well but you have to be able to seize evidence. I mean that's the line that's at issue. I mean that's why it goes back to the people. I mean what Congress had in mind when it passed the exception to the exception was the idea of people who have the authority to basically I mean the quintessential example are the ones that Congress discusses. People who come into your house and while they're there they act in bad faith and do you know and you know assault people. I mean that's what Congress was specifically concerned with. Now we don't have to go to how limited that is. They're here. We're nowhere near where you would be for someone who can seize evidence. I mean the only argument the plaintiff makes about that is that the analyst can issue administrative subpoenas. Now first of all the analysts can't issue administrative subpoenas. It's clear beside the regulations the very subpoena that's reproduced by the plaintiff does not have the analyst's signature. The analysts don't have the power even to issue an administrative subpoena. In turn even if they could an administrative subpoena is something that can only be enforced absent consent in an action by the attorney general. It's all laid out in our reply brief. So that even just as a starter that's just not accurate. But again the point is that there are a lot of people whose actions can contribute to the issuance of a subpoena. What the exception is designed to do is Congress didn't intend to exclude actions for false arrest. Congress knew that there could be situations in which there would be a mistaken and unfortunate situation like this one. But it didn't it generally barred them and when it enacted the law enforcement proviso it didn't say anybody who like helps to analyze reports or helps to prepare reports for the police. It put in a limited exception which reflects the problem that Congress was trying to deal with. And there are no cases that of which we're aware are cited that remotely resemble anything like this one. And again the argument that was made to the district court and was made on appeal and the district court heard it and rejected it was that the supposed authority to issue administrative subpoenas is what pushes the analysts over the line into being law enforcement officers. And that's incorrect. And the district court instead proceeded, the district court hadn't stopped there. It just would have been, you know, in time. And instead the district court looked to this notion of there being an alternative ground of grossly, excuse me, of police negligent investigation. Again, it doesn't matter how you style your claim. That's what this court said in Arnsberg and in Snow-Erlin and in Thomas Lazier. You know, this court's dealt with this kind of a claim many before. And this court has also in Arnsberg and Thomas Lazier expressly said that the law enforcement exception does not apply to the actions of people who provide the kinds of information that he goes to procure a false arrest. And like Arnsberg said it, the 11th Circuit then picks up an Arnsberg and its Metz decision. And back in Thomas Lazier this court then in turn approvingly cites the Metz decision. And these were all decisions from the 80s. This has been sort of established for a long time now. And the district court's sort of circumvention of this at the end just is a mistake. And it's doubly a mistake because the tort on which it relies would be one that would only be, if it did exist, would only be applicable to state actors and not to private actors, which the Supreme Court decision in Olson makes clear it cannot be a basis for allowing a claim to go forward. And it's sort of further problematic because, in fact, even the Arizona courts haven't actually ever held a municipality libel on those grounds. They've only suggested that they might recognize that. Even assuming that they did recognize it in some case, it really doesn't matter because it couldn't be applied under Olson. And even more fundamentally, it would still just represent a way of circumventing the bar on false arrest actions. And plaintiff's claim is obviously a sympathetic one. You know, it's not the question. Congress, when it barred the false arrest actions, was doing it for actions that would be meritorious, not just for actions that would be vexatious. And this really just falls plainly within that bar. The way that the way the statute is laid out, if someone if a federal person authorized to make arrest makes a false arrest, the person can sue the federal government. If a person unauthorized to make an arrest makes a false arrest, they can't. That's I don't think that that's necessarily the case. The way the act seems to explain it. First, you can't. OK. You can't sue for false arrest. Generally. Right. So if somebody some federal employee arrests somebody falsely and it's just somebody who works in a mint or something, you can't sue. I mean, if someone arrests someone falsely, I mean, usually the actions for false arrest, like, really come up when people are executing warrants. It's almost if you're acting in bed, the way that it could come up is the if you're executing a warrant and, you know, and this was part of plaintiff's theory that people knew that like it was intentional. But if you're executing a warrant or a law enforcement officer and you really know that what you're doing is wrong, you know, then it might be possible to have an action. But the intentional torts exception, I mean, the proviso to it, was also designed to deal with questions with the other torts, you know, including assault. And I think that was really the particularly motivating one. But, again, that's what most of the examples go to. But, again, if you have the authority or if you're a law enforcement officer and you just make an arrest in bad faith, you know, I understand that. But that's those are but that is an action you could bring. You're authorized to make an arrest. You make an arrest in bad faith. You meet all the criteria for a state law tort. That's someone who you can sue. I mean, it's not we're not saying that this is just a very puzzling way to say you can't sue for false arrest unless the arrest is made by the kind of person who almost certainly would be making an arrest. But I think there's something in the briefs on another subject that said that the D.E.A. authorizes it that the actually be used to arrest. Oh, no, Your Honor. I mean, we've set out the the provisions, decided them all sort of in the reply brief in response to some of the plaintiff's arguments. Maybe I'll ask opposing counsel. Yeah, no, they're they're not. These are I mean, these are essentially people who are putting, you know, sort of just inputting data. And, you know, they're they're likely in. I mean, it's very much sort of action kind of a job. And they also make very clear that what they do is they put a special agent in charge. But again, what Your Honor is listening to is that, yes, when you put in this proviso was that the kind of you would be making an arrest, a law enforcement officer. If somebody, in fact, comes in and arrests you and it really meets the criteria of a false arrest. Absolutely. That's what Congress was trying to get at. You can sue the United States in a circumstance like that. What Congress didn't want to do was recognizing that they're just inevitably. And this is a you know, this is a joint. This in some ways typifies the kind of problem that a rush into something like 30,000, like phone call names being put in here by a joint federal state task force. And Congress were to balance struck a different balance. You would have to be taking into account the number of actions and damages and the impact on law enforcement that would result if the negligence of all of those kinds of employees could give rise to an action. When is here? They result. We look to state law and this seems to be kind of a unique state law cause of action and unique to Arizona that the district court recognized. But it does it. The problem is that it doesn't even if that cause of action existed, it would it would one just represent a you can't get damages that result that are essentially sort of coterminous with those that are a false arrest and which is what plaintiffs at all times claim. And again, it also couldn't work under the United States v. Olson. Thank you very much, Your Honor. Good morning. Ann Findlay with Robinson Curtin for Mr. Kearns. Let me begin by answering your question about the false arrest. I think if an individual who is not a law enforcement officer who is a federal employee effectuates an arrest that one might bring a Bivens claim. I'm not sure that's left without a remedy. Perhaps a Bivens claim more appropriately than an FTCA claim. And that would be rather against the individual as opposed to the government. I think that might be the answer to that question. This case, though, you know, when the government says that this is an unfortunate situation, let's look at what Judge Wake in his very well-reasoned opinion said. He said this was gross negligence. He could not believe that given they had this information that they didn't collate it and pass it on to the agent so that the correct person could be arrested. And the question now is, is there a remedy for this? The facts are given. Gross negligence is given. And the question is, does Arizona law recognize a cause of action? What I'd like to do is suggest a three-step process for you that might cut through some of these questions. I think first, if you look for whether there's a remedy under Arizona law for this conduct, that if you begin with Olson and look at how Olson talks about like circumstances, not the same circumstances, but like circumstances. Like circumstances, let's look at a private party. What if MCI, not the analyst, but what if MCI had been grossly negligent in the transmission of identifying information? In this case, the good Scott, Mr. Kearns, who was not the target of the investigation, might well have a remedy against MCI because under Arizona law, and Arizona we take our torts seriously, we've got a constitutional provision, we take our torts seriously, that in fact, Mr. Kearns might well have had a cause of action had MCI made the very mistake that was made by this analyst. Now, what the government wants to say is, well, our analysts are sort of isolated, and they're not part of this process. So even though their defense at trial for false arrest was agents rely on agents, we have this analyst conduct out there that's been described as grossly negligent that somehow insulates both the arresting officer and the analyst. And I would suggest under Arizona law, that's not the correct result. So again, looking at the general provision where the government has waived its immunity is, would a private person be liable? And I think the answer is no doubt they would. Look at the Dedmon case. If you take Olson together with Dedmon, it clearly establishes that in Arizona this type of conduct, again, similar circumstances, would lead to liability. So given that we have liability under the general provision, let's look at the two exceptions that the government raises in defense. Exception number one, this is a discretionary activity. This isn't discretionary. No federal agent has the discretion to ignore exculpatory evidence and not pass it along. There's nothing about that conduct that would make you want to protect it or say it's discretionary. If you told every agent they have to pass on exculpatory information, that's not going to bring law enforcement to a halt. So by virtue of the information that the analyst had that needed to be, again, passed on, the agents then, when the agent took that information and used that information to arrest Mr. Kearns, that information, that grossly negligent information, it's not discretionary. There's no discretion involved in that. So given that there's no discretion, okay, that's the first exemption that the government talks about, right? Okay. The second exception is this law enforcement exception, which actually creates a really interesting policy question. And that is, okay, given that the officer is not liable because he relies on the analyst and the analyst is not responsible because she's not law enforcement, does that leave no remedy? And I would suggest, no, that's not what's intended by the statute. Well, that's, of course, a common result in sovereign immunity. Somebody gets thrown out if. But, see, here's the thing. In this case, the analyst's conduct is not the false arrest. The analyst's conduct is gross negligence. The false arrest aspect of the case, it's the agent saying I relied on another agent, I can't be responsible for having a false arrest. Even though there was a false arrest in the factual context, she didn't make the arrest. She gave the information upon which the arrest was made. And she did so in a negligent manner, and not just a negligent manner, but a grossly negligent manner. So either she's part of the investigative process, in which case she comes within the exception, or she's not part of the investigative process, which means you should treat her like any other citizen, and that puts you back at Deadman. So. Well, that, it's hard to make that prong work, that alternative work, isn't it? Because your damages totally arise out of a false arrest. Well, his damages are, his damages certainly arise from the fact that he was taken from his home and he was transported and he got to spend some time in Sheriff Joe's jail, and that's not a pleasant experience. But the false arrest, it's the fact that her negligence led to the false arrest. She didn't do the arrest. Somebody else did the arrest. I agree with that. But I guess the, I have trouble reading the Tort Claims Act exceptions for false arrest other than as conditioning the whole scheme. In other words, it's hard for me to say, well, you can take a State law analogy under the Tort Claims Act when false arrest is excluded. So it seems to me you have to get to your other alternative that you just put, that somehow they're really part of the whole law enforcement apparatus. Which I think is what, I think that's what the correct result in the case is, that she's part of this investigatory process. She, her, it focuses on, you know, the exceptions focus on one of two things. One is the actual functions. That's the discretionary aspect. The other is the status. Are you a law enforcement officer? Well, she's part of that whole process. She's not outside someplace else. She's not disconnected from the process, as you suggested earlier. She's intimately involved in the investigative process. So when you look at the plain language of the statute, which says, empowered by law to execute searches, to seize evidence, make arrests, they're talking about someone who is in the investigative process. And, in fact, these analysts were in the investigative process. Either that's got to be true or these agents can't rely on them. I mean, it doesn't make sense from a tort standpoint, you know, where are incentives, compensating individuals, to have this area of insulation of liability. Because what's the incentive there? Let's have all the analysts do all the work, and then the officer just shows up, makes the arrest, and there's never a consequence. And I don't think that's what the FTCA anticipates at all. And the reason I don't think that is because the FTCA wants us to look at the state law where these actions occurred. Again, looking at the Arizona law, Arizona has been open to inquiries in this exact nature. Dedmon is a great example. In Dedmon, that information was all there that that teller could have shown that the individual who was trying to get an advance on his credit card was actually the person who owned the credit card. I mean, that was all within the bank's employee's ability. And the court said, you can hold that bank liable, you can hold that employee liable, because that information was right there and available. And I think, again, going back to what is it that the FTCA covers. The FTCA covers the torts that would apply to a private person, that private persona. It's not just in the exact same circumstances. You can analogize to other circumstances. Kennedy. Counsel, doesn't the language of 2680H suggest that even if a plaintiff can identify another theory of liability under state law, such as negligence, that that claim is barred if it's based on false arrest or one of the other torts that are listed in the statute? But there was an arrest made. But the action isn't based on the false arrest because there's no false arrest available because the law enforcement individual relies on other agents. So it's not really a false arrest case. I mean, although that is the conduct, that was the damage, it's not really a false arrest case. It's a gross negligence case. Are you arguing that it's not a false arrest case because you're not suing the officers who made the arrest? Because the officers who actually made the arrest are not the people who are being held accountable here. Because, remember, at the trial court, and, in fact, this was in the materials that were supplied in the excerpts in the record, that there was a specific discussion, what's the status of the evidence? The status of the evidence is agents rely on agents. And that's the way that the process works, so that one agent doesn't have to go do all the inquiry to check, cross-check another agent. They rely on one another, which is why I think that's why, in this particular case, it makes much more sense to find that the analyst is part of the investigative process, because then it's the collective information, and then it's, then you have a false arrest from that information. But if you do separate the analyst out, then you look at that analyst's conduct in light of Arizona law. And there's Arizona law allowing for a gross negligence claim. But negligence isn't a tort standing by itself. Negligence causes some sort of harm, and then it becomes a tort when it injures somebody. Right. And her negligence caused the officers, caused the officers to take possession of someone they should not have taken possession of. But again, that doesn't. And what is the duty for the tort? What's her duty? You have to have a duty. The duty, I would say the duty under Arizona law is when you undertake to acquire and disseminate information, which may, upon its dissemination, have significant consequences to a third party, that you have an obligation or duty under Arizona law to do so non-negligently, Deadman. That in this case, though, it's not just negligence. It's gross negligence. You know, Judge Wake actually found that it was gross negligence. So in terms of you have a negligence, for example, just a car accident, it's a negligence action that results in a car wreck. It's called negligence. It's not negligently driving a car. It's a negligence action. And I think in this case, you have a similar situation. You have gross negligence, and it resulted, again, it did result in an arrest, but can stand on its own given the Arizona case law. Perhaps the better analytical result is that the analyst is part of the investigative process, because, again, you end up with this anomaly where you have people insulated from liability that don't seem under the FTCA to qualify for that. That that behavior, to have that insulated and beyond review doesn't jive with the FTCA. And, yes, in these cases you get anomalies. But if you look at not only, if you look at Olson, if you look at Indian Towing, the lighthouse case, you know, a private person, if you don't put the light out and people are expecting it and somebody gets hurt, you're liable. But then you look at Howard, and Howard looks to state law and says, if you are a recreational use landowner and you would be immune under the state law, then you're immune under the FTCA. And, again, I think that advances what the FTCA policy would be. Would you have had a Bivens action against the analysts considered separately? No. I'm not sure that you would, because the question would be a constitutional question. Actually, I haven't really, I'm not sure I have the right answer to that. But, no, I don't think it would be a Bivens. I think it would be a state law case. Because they were, I'm sorry. I'm sorry? I didn't hear. You think it would be what? I think it's, because it's a tort and would be covered under the FTCA, I think it would be under that. I guess the question is, should there have been an alternate pleading of a Bivens case? And I don't, not for the gross negligence. I think the Bivens is more of the false arrest case that you were talking about earlier. I notice my time is almost up. I would ask you to consider that Judge Wake made extensive findings of fact in this case, did a full analysis, and ask you to affirm his decision. Thank you very much. Thank you. Counsel, Kearns v. United States will be submitted and will take up Osborne v. Astru.
judges: Canby, Wardlaw, Mills